**ORIGINAL**

FILED

08 JUL 25 PM 3:45

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____  DEPUTY

**KRONENBERGER BURGOYNE, LLP**
Karl S. Kronenberger (Bar No. 226112)
Deepa Krishnan (Bar No. 228664)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@kronenbergerlaw.com
deepa@kronenbergerlaw.com

Attorneys for Plaintiffs
WWA GROUP, INC. and WORLD WIDE AUCTIONEERS, LTD.

BY FAX

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **WWA GROUP, INC.**, a Nevada Corporation; and **WORLD WIDE AUCTIONEERS, LTD.**, a British Virgin Island registered company,<br><br>Plaintiffs,<br><br>vs.<br><br>**FREDERIC POLLIART**, an individual; **WWAUCTIONS.BIZ**, an Internet Domain name; and **DOES 1-10**,<br><br>Defendants. | Case No. '08 CV 1349 JLS RBB<br><br>**COMPLAINT FOR:**<br><br>(1) Cybersquatting *in personam*;<br>(2) Cybersquatting *in rem*;<br>(3) Common Law Trademark Infringement;<br>(4) Civil Extortion;<br>(5) Defamation *per se*;<br>(6) Intentional Interference with Contractual Relations;<br>(7) Intentional Interference with Prospective Economic Advantage;<br>(8) Unfair Competition (Cal. Bus. & Prof. Code § 17200)<br><br>**AND**<br><br>**DEMAND FOR JURY TRIAL** |

Case No. COMPLAINT OF WWAG AND WWA

Plaintiffs WWA Group, Inc. ("WWAG") and World Wide Auctioneers, Ltd. ("WWA")(collectively, "Plaintiffs"), bring this Complaint against Defendants FREDERIC POLLIART ("POLLIART"), an individual, WWAUCTIONS.BIZ, an Internet Domain name ("the DISPUTED DOMAIN"), and DOES 1 – 10, collectively, and allege as follows:

## INTRODUCTION AND PARTIES

1. This is a civil action arising under the Lanham Act, 15 U.S.C. § 1111 *et seq.*, and also arising under California statutory and common law, as more fully described below. Plaintiffs bring this action to obtain a transfer to WWA of the unlawfully registered DISPUTED DOMAIN, and to obtain a personal judgment against POLLIART.

2. Plaintiff WWAG is an international, publicly traded company and the parent of Plaintiff WWA, an industrial equipment auction company, which auctions transportation and industrial equipment, both live and via Internet video. Plaintiffs' principal place of business is in Dubai, in the United Arab Emirates. Plaintiff WWAG is registered as a Nevada corporation, and Plaintiff WWA is a British Virgin Island registered company. Both Plaintiffs maintain Nevada and Arizona offices, with their principal place of business in the United States in Tempe, Arizona.

3. Since 2000, Plaintiffs have marketed and sold their products and services, in commerce, under the marks "World Wide Auctioneers", "WWA", "World Wide Auctions", and, most importantly for this action, "WW Auctions" (the "Mark"). Accordingly, in 2001, Plaintiff WWA registered the domain name <wwauctions.com> to distinguish itself from other similar companies. Plaintiffs have invested significant resources into building the brand name and reputation of the Mark, for example through advertising and marketing under the Mark. As a result, the Mark has gained secondary meaning in the marketplace. All intellectual property in and concerning the Mark is owned by Plaintiff WWA.

4. The DISPUTED DOMAIN, <wwauctions.biz>, containing Plaintiff WWA's exact Mark, is privately registered with the domain name registrar, Registrar.com. The owner of the DISPUTED DOMAIN is employing a service to shield the owner's identity in

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

1  the WHOIS domain name ownership record of the DISPUTED DOMAIN.  Upon
2  information and belief, POLLIART is the registrant of the DISPUTED DOMAIN.

3     5.    As more fully set forth below, POLLIART is a disgruntled investor, who claims to have lost money sometime after 1996.  He brought a lawsuit in the Superior Court of California, San Diego County, for fraud (hereinafter, the "California Action").  The court entered summary judgment for defendants.  POLLIART appealed the decision, and the appellate court upheld the trial court's judgment.  Since then, POLLIART has engaged in the systematic defamation and harassment of various unaffiliated parties, including Plaintiffs, wrongfully accusing these parties of participating in an imaginary conspiracy related to the California Action.

    6.    This Complaint shall be amended to substitute names of individuals or business entities for "Does" in due course, for example, upon the identification of additional defendants through discovery.

    7.    Whenever in this Complaint reference is made to the acts of POLLIART or Defendants, that allegation shall refer collectively to POLLIART, the DISPUTED DOMAIN, and Does 1 – 10 who, as more fully alleged below, are, upon information and belief, co-conspirators and/or are engaged in an express or implied principal/agent relationship whereby individual defendants operate under actual or ostensible authority to perform the acts so alleged, and/or whereby individual defendants authorize, aid, abet, furnish the means to, advise, or encourage the acts of the other individual defendants.

**JURISDICTION AND VENUE**

    8.    Original subject matter jurisdiction is conferred upon this Court by the Lanham Act, 15 U.S.C. § 1111 *et seq.*.  Supplemental jurisdiction over claims arising under the law of the State of California is conferred upon this Court under 28 U.S.C. §1367.

    9.    In the alternative to Paragraph 10 below, this Court has personal jurisdiction over POLLIART, because POLLIART has litigated and then appealed an action in this District for over three years, purposefully availing himself of the privilege of

conducting activities in this forum, and Plaintiffs' claims are directly related to and/or arise out of POLLIART's forum related activities. Moreover, upon information and belief, POLLIART has been employed in the State of California and/or has served as an officer of a company with a California office.

10. In the alternative to Paragraph 9, this Court has *in rem* personal jurisdiction over the DISPUTED DOMAIN pursuant to 15 U.S.C. §1125(d)(2), as the filing of this Complaint will serve as a request for the Domain name registrar to deposit a registrar certificate pursuant to 1125(d)(2)(D)(i)(I).

11. Venue is proper in the Southern District of California pursuant to 28 U.S.C §1391(b)(3) because this action is not founded solely on diversity, POLLIART can be found in this District, and presently there is no other District where this action may be brought.

## POLLIART'S CALIFORNIA ACTION

12. Upon information and belief, in or around 1996 POLLIART claims to have invested $182,000 through a company called "Oxford International." In exchange, POLLIART claims that Oxford International sold him shares of stock in various companies, including "ZiaSun." Upon information and belief, POLLIART claims to have lost an unspecified sum of money due to the Oxford International's investments in ZiaSun. In March 2003, POLLIART, on his own behalf, sued various individuals who he claimed were involved in either Oxford International or ZiaSun's alleged scheme to defraud investors through the use of "boiler rooms" to raise money. POLLIART did not name Plaintiffs in that action (the aforementioned "California Action").

13. The Superior Court for San Diego County entered summary judgment in favor of the defendants in the California Action. POLLIART appealed, again claiming that defendants were engaged in an elaborate scheme, that "defendants are cunning business people who have built a network of inter-related companies by working together, each on behalf of the rest." The California Court of Appeal for the Fourth District, in May 2006, disagreed and upheld the trial court's judgment.

Case No.  
3  
COMPLAINT OF WWAG AND WWA

## POLLIART BEGINS CONTACTING PLAINTIFF

14. Prior to or soon after filing the California Action, POLLIART contacted ex-employees of WWAG's CEO in the Philippines, claiming that POLLIART was from the U.S. Embassy, and that unless the ex-employees manufactured information about WWAG's CEO, POLLIART would cancel their U.S. Visas. These ex-employees passed POLLIART's contact information on to Plaintiffs, and Plaintiffs phoned POLLIART in response. On that call, POLLIART stated, "you know what I want – I want money," and then POLLIART hung up.

15. POLLIART, upon information and belief, then created a website hosted on the domain "oxford-international-management.com" (the "First Domain") which described a supposed conspiracy between various parties, including those named in the California Action, to improperly raise funds and then pass the money between the entities "to claim sort of viable business or activities" – i.e., the website on the First Domain reflected the allegations in POLLIART's California Action. It also provided updates on the status of that litigation and posted pictures of individuals allegedly linked to the conspiracy.

16. POLLIART registered the First Domain in December 2003, shortly after he filed the California Action. In 2004, WWAG's CEO, Eric Montandon, started receiving phone calls from "Polliart" (per the caller ID). Each time Montandon answered the phone calls, however, POLLIART would hang up.

## THE <WWAUCTIONS.BIZ> DISPUTED DOMAIN AND ITS WEBSITE

17. Six months after losing his appeal, POLLIART shifted his focus. Upon information and belief, POLLIART decided that extorting a publicly traded company with a valuable trademark would be the most lucrative strategy to continue his quest, and therefore registered the DISPUTED DOMAIN encompassing WWA's Mark, while eventually abandoning the website on the First Domain. POLLIART then created the offending website on the DISPUTED DOMAIN. The website on the DIPSUTED DOMAIN contains numerous inaccuracies and outright falsehoods tied to the imaginary conspiracy

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

conjured up by POLLIART. The website also posts personal and confidential information, including family pictures, resumes, and social security numbers of individuals POLLIART claims are the "international criminals" or their affiliates. Most critically, it unjustly alleges that Plaintiff WWAG is an unaudited, "shell of a company," engaged in fraud and stock manipulation.

18. The website justifies its existence with the following opening paragraphs on its home page:

> Ziasun, an incredible NASDAQ fraud stretching more than 15 years up to now, involving dozens of International Criminals, thousands of offshore investors, corrupted accountants and lawyers, dozens of shell companies, Millions de dollars, and every continents except Africa.

> This Web site contains thousands of hours of investigation... documents to bring the fraud to daylight. Ziasun does not exist anymore however its offspring companies are still well alive (Investools, WW auctioneers, Asia4sale). Most actors continue operating in stock fraud, in one way or another, some of them retired in great luxury, mostly unchallenged.

19. As stated above, the website is replete with inaccuracies. With regard to Plaintiffs, the following are just a few examples:

| Website's Allegation | The Truth |
|---|---|
| WWAG "tried to have audited accounts but failed to find accountant." | WWAG is in full compliance with SEC regulations and auditing procedures, and has a fully accredited auditor. |
| "World Wide Auctioneers has no audited accounts.... for good reasons." | See above. |
| "Fake accounting. Brokers in jail." | See above. |
| "Auction business is a cover for share issuance (to Philippine | See above. |

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

| | |
|---|---|
| "partner...), and company survives through loans of money to those partners and revenue from share selling." | |
| "Revenue claimed during latest video interview of Montandon is simply not real." | See above. |
| "Montandon once more is using a corrupt CPA to try to justify its books." | See above. |
| "WWA issues shares to Philippines boiler rooms." | WWAG is a multi-national, publicly traded company with absolutely no need for, or association with, boiler rooms. |
| "World Wide Auctioneers [is] a tiny Ebay of heavy equipment." | WWA has sold at auction over 46,200 items construction equipment at its 55 auctions in Dubai from March 2001 through April 2008, for a total amount of over $652 Million in auction value. WWA controls a market share of over 65% of all industrial equipment auction sales concluded in Dubai in 2005, 2006 and 2007 |
| World Wide Auctioneers' Ro Ro Ship "does not exist." | WWA's ship exists and is running well. |

20. Additionally, POLLIART claims that Plaintiff WWAG's CEO, Eric Montandon, as well as former employee Mark Harris, are involved with the "illegal selling of shares, and defrauding mostly oversea investors." He further claims that Montandon and Harris, along with the other "players," are "drug addicts," "alcoholics" and "bad apples." These statements are patently false and, upon information and belief, made by POLLIART in order (a) to extort money from Plaintiffs and its CEO, and relatedly, (b) to manipulate WWAG's stock price. Thus, POLLIART makes several other untrue and offensive statements regarding Montandon personally, and ends one full page dedicated to Montandon with the following falsehood: "Montandon still promotes his World Wide Auctioneers company, having several auctions organized as a facade to stock manipulation, as he always did."

21. In or around July 2007, Plaintiff WWAG's CEO, Eric Montandon, filled out the "contact us" form on the DISPUTED DOMAIN's website in an attempt to amicably resolve this matter. The message was directed to "Frederic Polliart." In response,

Plaintiff WWAG's CEO received a message from "Montandon Eric [eric_montandon@yahoo.com]." Using this fake e-mail address, the person assuming Montandon's identity stated: "You stole 500k$ from me. Rest are basic facts. Give me your skype ID."

22.  In or around August 2007, POLLIART, again using the fake Montandon e-mail address, sent another message to Plaintiff WWAG's CEO stating: "Montandon, when will I get my money back?"

23.  Some of the IP addresses used by POLLIART to send fake-Montandon e-mails resolve to POLLIART's employer. Other IP addresses resolve to the location of POLLIART's residence.

## FIRST CLAIM

*Cybersquatting Under Section 43(d) of The Lanham Act, 15 USC §1125(d)(1)(A)*

**(By WWA as to POLLIART and DOES 1-10)**

24.  Plaintiffs repeat, reallege, and incorporate each and every allegation set forth in paragraphs 1 through 23 of this Complaint.

25.  The actions as described above, including the registrant's continued use of the DISPUTED DOMAIN, constitute use of Plaintiff WWA's Mark and name in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d)(1).

26.  Defendants have registered the DISPUTED DOMAIN, which is identical or confusingly similar to the Mark, with the bad faith intent of profiting from the Mark.

27.  As a direct and proximate result of the actions, conduct, and practices alleged above, including Defendants' continued use of the DISPUTED DOMAIN in connection with its website, Plaintiff WWA has been damaged and will continue to be damaged.

28.  Plaintiff WWA has no adequate remedy at law.

///

## SECOND CLAIM

*Cybersquatting Under Section 43(d) of The Lanham Act, 15 USC §1125(d)(2)(A)*

**(By WWA as to the DOMAIN)**

29. Plaintiffs repeat, reallege, and incorporate each and every allegation set forth in paragraphs 1 through 23 of this Complaint.

30. The actions as described above, including the registrant's continued use of the DISPUTED DOMAIN, constitute use of Plaintiff WWA's Mark and name in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d)(2).

31. As a direct and proximate result of the actions, conduct, and practices alleged above, Plaintiff WWA has been damaged and will continue to be damaged.

32. Plaintiff WWA has no adequate remedy at law.

## THIRD CLAIM

*Common Law Trademark Infringement*

**(By WWA as to POLLIART and DOES 1-10)**

33. Plaintiffs repeat, reallege, and incorporate each and every allegation set forth in paragraphs 1 through 23 of this Complaint.

34. Defendants have infringed the Mark by their acts as alleged above, including by their use of the Mark in the DISPUTED DOMAIN. Such use of the Mark is without permission or authority of Plaintiff WWA, and such use by Defendants is likely to cause confusion, to cause mistake and to deceive.

35. Plaintiff WWA has been damaged in an amount to be proven at trial, and Plaintiff WWA is entitled to enhanced remedies as provided by law for Defendants' willful conduct.

36. By engaging in the conduct as herein above alleged, Defendants have acted willfully, maliciously, oppressively and fraudulently, and Plaintiff WWA is therefore entitled to punitive damages in an amount according to proof.

## FOURTH CLAIM

*Civil Extortion*

**(By WWAG and WWA as to POLLIART and DOES 1-10)**

37. Plaintiffs repeat, reallege, and incorporate each and every allegation set forth in paragraphs 1 through 23 of this Complaint.

38. The aforesaid acts of Defendants constitute civil extortion in that Defendants are publishing false, defamatory, and otherwise harmful content, accusing Plaintiffs of unlawful activity, on the DISPUTED DOMAIN, and threatening to continue doing so unless Plaintiffs pay $500,000 to POLLIART.

39. As a direct and proximate result of the actions, conduct, and practices of Defendants' alleged above, Plaintiffs have suffered, and will continue to suffer, damages and irreparable harm.

40. Plaintiffs have no adequate remedy at law.

## FIFTH CLAIM

*Defamation*

**(By WWAG and WWA as to POLLIART and DOES 1-10)**

41. Plaintiffs repeat, reallege, and incorporate each and every allegation set forth in paragraphs 1 through 23 of this Complaint.

42. Defendants have made, or knowingly conspired and agreed to be made, false statements to prospective and existing customers of Plaintiffs regarding the business, background, and overall validity of Plaintiffs' enterprise.

43. Defendants' statements constitute defamation *per se*, in that they defame Plaintiffs in their trade.

44. Defendants knew or should have known that the statements published were false.

45. Defendants published these statements to various third parties without privilege.

46. As a proximate result of the foregoing acts, Defendants have caused

actual harm and are liable to Plaintiffs for damages in an amount to be proven at trial.

47. Defendants have engaged in conduct of a malicious, oppressive, or fraudulent nature, thereby entitling Plaintiffs to an award of punitive damages.

48. As a direct and proximate result of the actions, conduct, and practices of Defendants' alleged above, Plaintiffs have suffered, and will continue to suffer, damages and irreparable harm.

49. Plaintiffs have no adequate remedy at law.

## SIXTH CLAIM

### Intentional Interference with Contractual Relations

### (By WWAG and WWA as to POLLIART and DOES 1-10)

50. Plaintiffs repeat, reallege, and incorporate each and every allegation set forth in paragraphs 1 through 23 of this Complaint.

51. The aforesaid acts of Defendants constitute common tortious interference with Plaintiffs' existing contractual relations with existing customers, in that Defendants were aware that Plaintiffs had contractual relations with numerous third parties, including, without limitation, Continental Plant and Equipment and Al Qastal Establishment, and Defendants purposefully and intentionally acted to interfere with or induce others to interfere with the performance or existence of these contractual relations or to induce others to do so, or knowingly conspired and agreed to a common plan pursuant to such end, to the detriment of Plaintiffs.

52. As a direct and proximate result of the actions, conduct, and practices of Defendants' alleged above, Plaintiffs' contractual relations with third parties, including, without limitation, Continental Plant and Equipment and Al Qastal Establishment, were disrupted.

53. As a direct and proximate result of the actions, conduct, and practices of Defendants' alleged above, Plaintiffs have suffered, and will continue to suffer, damages and irreparable harm.

54. Plaintiffs have no adequate remedy at law.

## SEVENTH CLAIM

*Intentional Interference with Prospective Economic Advantage*

**(By WWAG and WWA as to POLLIART and DOES 1-10)**

55.  Plaintiffs repeat, reallege, and incorporate each and every allegation set forth in paragraphs 1 through 23 of this Complaint.

56.  The aforesaid acts of Defendants constitute common tortious interference with Plaintiffs' prospective economic advantage with existing and prospective customers, in that Defendants were aware that Plaintiffs were engaged in a valid and existing business relationship with numerous third parties, including, without limitation, Continental Plant and Equipment and Al Qastal Establishment, and Defendants purposefully and intentionally acted to prevent the coming to fruition of potential economic advantages Defendants knew to exist, or knowingly conspired and agreed to a common plan pursuant to such end, with the intent of harming Plaintiffs.

57.  As a direct and proximate result of the actions, conduct, and practices of Defendants' alleged above, Plaintiffs' valid and existing business relationships with third parties, including, without limitation, Continental Plant and Equipment and Al Qastal Establishment, were disrupted.

58.  As a direct and proximate result of the actions, conduct, and practices of Defendants' alleged above, Plaintiffs have suffered, and will continue to suffer, damages and irreparable harm.

59.  Plaintiffs have no adequate remedy at law.

## EIGHTH CLAIM

*Unfair Competition Under Cal. Bus. and Prof. Code § 17200*

**(WWAG and WWA as to POLLIART and DOES 1-10)**

60.  Plaintiffs repeat, reallege, and incorporate each and every allegation set forth in paragraphs 1 through 59 of this Complaint.

61.  Defendants' actions, as more fully detailed above, are unlawful, – and therefore constitute unfair competition as defined in Cal. Bus. and Prof. Code § 17200.

Specifically,

    a. As alleged in Plaintiffs' Second Claim *(cybersquatting)*, Defendants have used Plaintiff WWA's Mark, identically, in the DISPUTED DOMAIN with a bad faith intent.

    b. As alleged in Plaintiffs' Fifth Claim *(defamation)*, Defendants have posted numerous falsehoods injuring Plaintiffs in their trade.

    c. As alleged in paragraphs 21-23, Defendants have communicated through an assumed e-mail address, posing as Plaintiff WWAG's CEO. These actions are a violation of *Cal. Penal Code § 530.5*, regarding the Unauthorized Use of Personally Identifying Information.

    d. As alleged in Plaintiffs' Fourth Claim *(extortion)*, Defendants have, through that fake e-mail address, demanded large sums of money from Plaintiffs, in exchange for Defendants ceasing their unlawful Internet activity at the DISPUTED DOMAIN.

    e. Moreover, Defendants have registered a ".biz" domain name without a bona fide business or commercial purpose, in contravention of the *Restrictions Dispute Resolution Policy*, the applicable rules governing the registration agreement between Defendants and the DISPUTED DOMAIN's registrar.

62. As a direct and proximate result of the actions, conduct, and practices of Defendants' alleged above, Plaintiffs have suffered, and will continue to suffer, damages and irreparable harm.

63. Such actions, unless enjoined, will cause Plaintiffs further and irreparable harm.

## PRAYER

WHEREFORE, Plaintiffs pray that this Court enter judgment in its favor on each and every claim set forth above, and further pray an award to Plaintiffs of:

1. A judgment that Defendants have defamed Plaintiffs and have infringed on Plaintiff WWA's trademark;

2. A judgment ordering Defendants to remove permanently all references to

Eric Montandon, Mark Harris, Plaintiffs and their subsidiaries, affiliates, officers, or employees and former employees from the website at the DISPUTED DOMAIN and from any other website owned or controlled by Defendants;

3. A preliminary and permanent injunction and judgment enjoining Defendants and their agents, employees, representatives, and successors and predecessors in interest from:

    a. Making false and defamatory statements about Plaintiffs, their subsidiaries, affiliates, officers, or employees; and,

    b. Operating a website on the DISPUTED DOMAIN or on any other domain, which contains any references to Eric Montandon, Mark Harris, Plaintiffs, and their subsidiaries, affiliates, officers, or employees or former employees, including;

4. A judgment ordering Register.com to transfer the DISPUTED DOMAIN to Plaintiff WWA; alternatively, if Register.com is not the current registrar of the DISPUTED DOMAIN, a judgment ordering the current registrar to transfer the DISPUTED DOMAIN to Plaintiff WWA;

5. An award of compensatory and/or statutory damages in an amount to be determined at trial;

6. Punitive and exemplary damages in an amount equal to $3 million or three times actual damages, whichever is greater, to serve as punishment and deterrent in light of Defendants' substantial wrongful acts;

7. A public retraction by Defendants relating to all false and defamatory statements made about Plaintiffs;

8. Plaintiffs' costs and attorneys' fees in this action;

9. Pre-judgment and post-judgment interest; and

///

10. Such other further relief to which Plaintiffs may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

DATED: July 25, 2008

KRONENBERGER BURGOYNE, LLP

By: 
Karl S. Kronenberger
Attorneys for Plaintiffs
WWAG and WWA

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial of this action by jury.

DATED: July 25, 2008                    KRONENBERGER BURGOYNE, LLP



By: _____
Karl S. Kronenberger
Attorneys for Plaintiffs
WWAG and WWA

```
         UNITED STATES
         DISTRICT COURT
     SOUTHERN DISTRICT OF CALIFORNIA
           SAN DIEGO DIVISION

       # 153395      - TC

         July 25, 2008
            15:47:17


         Civ Fil Non-Pris
    USAO #.: 08CV1349
    Amount.:              $350.00 CK
    Check#.: BC3028900



         Total-> $350.00


    FROM: WWA GROUP, INC.
          VS.
          FREDERIC POLLIART
```

ORIGINAL

%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
WWA Group, Inc. and World Wide Auctioneers, Ltd.

### DEFENDANTS
Frederic Polliart, WWAuctions.biz, and Does 1-10

(b) County of Residence of First Listed Plaintiff: **Maricopa County, AZ**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**08 CV 1349 RBB**

(c) Attorney's (Firm Name, Address, and Telephone Number)
Karl S. Kronenberger, KRONENBERGER BURGOYNE, LLP, 150 Post Street, STE 520, San Francisco, CA 94108, (415) 955-1155

Attorneys (If Known)

**BY FAX**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1. U.S. Government Plaintiff
- ☒ 3. Federal Question (U.S. Government Not a Party)
- ☐ 2. U.S. Government Defendant
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☒ 840 Trademark | ☐ 480 Consumer Credit |
|  | ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  |  | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
|  |  |  | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS / PRISONER PETITIONS | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | IMMIGRATION |  |  |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee |  |  |
|  | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions |  |  |

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Lanham Act, 15 U.S.C. § 1111 et seq.
Brief description of cause:
Cybersquatting under the Lanham Act

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ Injunctive relief
CHECK YES only if demanded in complaint
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE _____  DOCKET NUMBER _____

DATE: 07/25/2008
SIGNATURE OF ATTORNEY OF RECORD: [signature]

FOR OFFICE USE ONLY
RECEIPT # 153395  AMOUNT $350  APPLYING IFP ___  JUDGE ___  MAG. JUDGE ___

TAC 7/25/08